**FILED**

May 18, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
Michael Trujillo
DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | |
| § | |
| **OSCAR INSURANCE COMPANY OF** § | **EP-22-CV-0114-DG** |
| **FLORIDA**, a Florida Corporation, **OSCAR** § | |
| **MANAGEMENT CORPORATION** a Delaware § | |
| Corporation, and **JOHN DOES 1-4** § | |
| **Defendants.** § | |
| § | |

## NOTICE OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff hereby amends his Original Complaint with the attached First Amended

Complaint. The new Defendant was unknown to Plaintiff at the time of the original complaint

being filed and the Court should freely grant Plaintiff leave to amend. Pursuant to Rule

15(a)(1)(B) Plaintiff may amend his Complaint as a matter of course.

May 17, 2022,                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com

**FILED**

May 18, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
Michael Trujillo
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ERIK SALAIZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **OSCAR INSURANCE COMPANY OF** | § | **EP-22-CV-0114-DG** |
| **FLORIDA**, a Florida Corporation, **OSCAR** | § | |
| **MANAGEMENT CORPORATION** a Delaware | § | |
| Corporation, and **JOHN DOES 1-4** | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES PLAINTIFF ERIK SALAIZ with his First Amended Complaint herein and alleges and states as follows:

**PARTIES**

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant OSCAR INSURANCE OF FLORIDA ("Oscar") is a corporation organized and existing under the laws of Florida with a principal address at 75 Varick Street, 5th Floor, New York, New York 10013 and can be served via registered agent Chief Financial Officer of Florida at 200 East Gaines Street Po Box 6200, Tallahassee, Florida 32399.

3.      Defendant OSCAR MANAGEMENT CORPORATION ("Oscar Management") is a corporation organized and existing under the laws of Delaware with a principal address at 75 Varick Street, 5th Floor, New York, New York 10013 and can be served via registered agent C T

Corporation System 1999 Bryan Street, Suite 900, Dallas, TX 75201.

4.    Defendant JOHN DOE 1 with information and belief is a telemarketing call center operating out of Florida that is unknown to Plaintiff and will be revealed during discovery.

5.    Defendant JOHN DOE 2 with information and belief is a natural person, resident of Florida and President of John Doe 1 which their true identity is unknown to Plaintiff and will be revealed during discovery.

6.    Defendants Oscar, Oscar Management, John Doe 1, and John Doe 2 altogether ("Defendants")

### JURISDICTION AND VENUE

7.    Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

8.    Personal Jurisdiction.  This Court has general personal jurisdiction over the defendants because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

9.    Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

10.    This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations."  *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

24.     Plaintiff's personal cell phone has been on the National Do-Not-Call Registry since June 2021.

25.     Plaintiff has never had any relationship with Defendants and never gave them his prior express written consent to receive the unauthorized robocalls alleged in this case.

26.     Through information and belief, Defendant Oscar Management uses an anonymous telemarketing call center that is operating out of Florida to send robocalls to consumers en mass using artificial or prerecorded voice messages soliciting health insurance plans on their behalf.

27.     Plaintiff received at least 89 unauthorized robocalls within a six-month period to his personal cell phone (915) 540-5210 from Defendants.

28.     Each and every call Plaintiff received from Defendants started with the same artificial or prerecorded voice message in Spanish that stated "this is an important call for Medical coverage" and to press one to speak to a representative.

29.     On January 7, 2022, Plaintiff received one of multiple calls to his personal cell phone (915) 540-5210 from Defendants from phone number (713) 921-0229.

30.     Plaintiff answered and heard an artificial or prerecorded voice message in Spanish that stated "this is an important call for Medical coverage" and to press one to speak to a representative.

31.     Plaintiff was annoyed and aggravated for receiving the same phone calls and pressed one to speak to a representative in order to identify the company responsible for the illegal robocalls.

32.     Plaintiff was then transferred to a female representative from Defendants who did not provide her name or the company she was calling on behalf of and stated they were calling to see if Plaintiff needed medical coverage. The representative then solicited Plaintiff for a healthcare plan on behalf of Defendants Oscar Management.

33.     Plaintiff advised the representative he needed medical coverage for the sole purposes of identifying the company responsible for the illegal robocalls.

34.     The representative did not know Plaintiff's name indicating the phone calls could've reached anyone in the United States and were made using an automatic telephone dialing system ("ATDS").

35.     The representative then collected Plaintiff's personal information along with his annual income.

36.      The representative advised Plaintiff she found a healthcare plan for him, and the coverage would be through Defendant Oscar Management.

37.     The representative then finalized the terms of the healthcare plan and advised the Plaintiff his coverage would be $145/mnth which would benefit Defendant Oscar Management financially.

38.     Plaintiff asked the representative what their company name and information was, and the representative stated they are out of Florida but would not disclose their true identity and advised Plaintiff his healthcare plan would be through Oscar Management.

39.     Plaintiff received a healthcare ID card via USPS Member ID OSC79173015-01 that lists Defendant Oscar Management as the healthcare provider and the company responsible for the illegal robocalls made to Plaintiff's personal cell phone.

40.     The healthcare plans solicited to Plaintiff from or on behalf of  Defendant Management would benefit all Defendants financially.

41.     Plaintiff continued to receive the same phone calls that started with the same prerecorded or automated voice message in Spanish that stated "this is an important call for Medical coverage" to his personal cell phone 5210 from or on behalf of Defendant Management after receiving his healthcare card.

42.     The phone calls Plaintiff continued to receive from or on behalf of Defendant Management weren't in relation to Plaintiff's preexisting healthcare card and are not in any way shape or form considered a business relationship as these phone calls could've reached anyone in the United States.

43.     Defendant Oscar Management knowing and willfully authorizes anonymous telemarketers to place illegal robocalls as the ones alleged in this case to millions of consumers en mass by using an ATDS because it benefits Defendant Oscar Management financially when a consumer purchases a healthcare policy from them.

44.     Defendant Oscar Management approves of the contracts with the telemarketers.

45.     Defendant Oscar Management authorizes the payments to the telemarketers.

46.     Defendant Oscar Management pays the telemarketers out of bank accounts they own and control.

47.     Defendant Oscar Management approves of the scripts with the artificial or prerecorded voice messages soliciting healthcare insurance plans on their behalf.

48.     Defendants John Doe 1 on eight occasions used a local area code (915) where Plaintiff resides to trick him into thinking the calls were local.

49.     Tables below displays calls made to Plaintiff by or on behalf of Defendant Oscar Management:

| Date | Time | Caller ID |
|---|---|---|
| 10/15/2021 | 10:19AM | 281-944-5761 |
| 10/17/2021 | 12:35PM | 936-264-0998 |
| 10/17/2021 | 1:03PM | 903-321-5639 |
| 10/17/2021 | 1:06PM | 346-331-4420 |
| 12/13/2021 | 3:56PM | 713-518-1801 |
| 12/13/2021 | 4:32PM | 409-205-1038 |
| 12/14/2021 | 11:34AM | 210-345-4503 |
| 12/14/2021 | 12:37PM | 972-395-0005 |
| 12/14/2021 | 1:34PM | 210-775-4868 |
| 12/14/2021 | 3:37PM | 936-449-1072 |
| 12/14/2021 | 4:05PM | 214-441-6704 |
| 12/20/2021 | 10:38AM | 800-427-4880 |
| 12/20/2021 | 12:57PM | 800-966-4582 |
| 12/21/2021 | 10:23AM | 800-223-8447 |
| 12/21/2021 | 10:31AM | 800-277-8687 |
| 12/22/2021 | 10:11AM | 800-264-8716 |
| 12/22/2021 | 11:18AM | 800-253-5814 |
| 12/22/2021 | 11:57AM | 800-387-7063 |
| 12/27/2021 | 6:24PM | 800-232-3138 |
| 12/29/2021 | 11:04AM | 800-625-5139 |
| 12/30/2021 | 5:49PM | 956-352-1045 |
| 1/3/2022 | 1:45PM | 956-718-4358 |
| 1/3/2022 | 3:30PM | 254-304-5817 |
| 1/4/2022 | 11:28AM | 214-360-1639 |
| 1/5/2022 | 12:52PM | 409-244-4351 |
| 1/5/2022 | 3:00PM | 806-385-3265 |
| 1/5/2022 | 4:35PM | 512-448-7705 |
| 1/7/2022 | 11:41AM | 713-921-0229 |

| Date | Time | Caller ID |
|------|------|-----------|
| 1/10/2022 | 10:46AM | 713-784-9332 |
| 1/11/2022 | 11:48AM | 806-938-7309 |
| 1/11/2022 | 12:18PM | 214-756-0495 |
| 1/12/2022 | 11:50AM | 979-272-0481 |
| 1/13/2022 | 11:07AM | 903-848-0446 |
| 1/13/2022 | 11:52AM | 512-343-3357 |
| 1/13/2022 | 3:05PM | 903-725-1599 |
| 1/14/2022 | 1:06PM | 409-586-2531 |
| 1/17/2022 | 10:56AM | 956-304-0880 |
| 1/17/2022 | 11:52AM | 210-701-0772 |
| 1/20/2022 | 10:24AM | 817-270-0582 |
| 1/20/2022 | 1:23PM | 936-365-1744 |
| 1/20/2022 | 4:31PM | 325-272-6918 |
| 1/20/2022 | 5:18PM | 254-589-7661 |
| 1/21/2022 | 12:02PM | 972-559-0568 |
| 1/21/2022 | 3:34PM | 972-844-1196 |
| 1/24/2022 | 9:58AM | 832-803-1170 |
| 1/25/2022 | 11:32AM | 830-613-3268 |
| 1/26/2022 | 10:15AM | 817-685-6804 |
| 1/27/2022 | 11:50AM | 806-680-0982 |
| 1/27/2022 | 12:13PM | 512-544-8732 |
| 1/28/2022 | 10:05AM | 361-526-8995 |
| 1/28/2022 | 10:14AM | 832-416-1035 |
| 1/28/2022 | 10:43AM | 903-422-7084 |
| 1/28/2022 | 12:20PM | 956-944-5578 |
| 1/28/2022 | 4:20PM | 817-717-4399 |
| 2/1/2022 | 11:35AM | 254-742-1352 |
| 2/1/2022 | 4:19PM | 210-999-2271 |
| 2/1/2022 | 4:23PM | 210-731-2908 |
| 2/1/2022 | 4:26PM | 361-232-2973 |
| 2/3/2022 | 11:10AM | 512-374-2974 |
| 2/4/2022 | 10:33AM | 210-650-2367 |
| 2/4/2022 | 1:03PM | 435-827-0070 |
| 2/7/2022 | 6:59PM | 214-418-2450 |
| 2/8/2022 | 11:24AM | 361-257-1698 |
| 2/8/2022 | 12:33PM | 281-496-7972 |
| 2/8/2022 | 1:37PM | 254-318-3987 |
| 2/8/2022 | 3:31PM | 281-829-8234 |
| 2/9/2022 | 11:56AM | 325-246-1654 |
| 2/10/2022 | 11:13AM | 409-735-1470 |

| Date | Time | Caller ID |
|------|------|-----------|
| 2/14/2022 | 9:58AM | 254-327-2994 |
| 2/15/2022 | 10:08AM | 432-231-4743 |
| 2/16/2022 | 11:08AM | 940-241-0696 |
| 2/16/2022 | 12:24PM | 308-316-2782 |
| 2/21/2022 | 10:42AM | 903-398-1211 |
| 2/24/2022 | 12:12PM | 325-736-8924 |
| 2/25/2022 | 1:45PM | 469-758-2945 |
| 2/25/2022 | 2:21PM | 832-227-5876 |
| 2/25/2022 | 4:17PM | 210-362-2907 |
| 2/25/2022 | 6:21PM | 972-678-9113 |
| 3/3/2022 | 11:29PM | 713-651-7407 |
| 3/4/2022 | 4:20PM | 281-637-0895 |
| 3/10/2022 | 12:23PM | 915-209-1852 |
| 3/14/2022 | 1:04PM | 915-276-6731 |
| 3/15/2022 | 11:17AM | 915-888-8290 |
| 3/15/2022 | 4:55PM | 980-458-9986 |
| 3/18/2022 | 5:44PM | 915-710-1689 |
| 3/21/2022 | 12:41PM | 915-496-4397 |
| 3/22/2022 | 1:37PM | 915-742-4423 |
| 3/22/2022 | 6:27PM | 915-265-1166 |
| 3/24/2022 | 4:01PM | 915-865-2871 |

50.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate

multiple federal laws and state consumer statutes.

51.     Each and every call was placed while knowingly ignoring the national do-not-call

registry.  Each and every call was placed without training their agents/employees on the use of

an internal do-not-call policy

52.     Defendant Oscar Management never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent

an internal do-not-call policy request to jkahn@hioscar.com on March 27, 2022.

53.     Defendant Oscar Management's website is https://www.hioscar.com.

54.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming

telemarketing calls consumed part of this capacity.

55.     No emergency necessitated the calls.

56.     On information and belief, the Defendant Oscar Management did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

57.     Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

58.     Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

59.     Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

60.     Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## VICARIOUS LIABILITY

61.     Defendant Oscar Management is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

62.     "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)).  "Formal Agency" in this context means actual authority, which may be

express or implied. Id,.

63. Defendant Oscar  Management gave express authority and apparent authority to unknown

telemarketers when it entered into a contract with Defendant John Doe 1, and 2 with full

knowledge the administration of sales and solicitation of sales of the healthcare plans

marketed as a result of the contract would be marketed using an ATDS and prerecorded

voice messages.

64. Defendant Oscar Management have ratified the conduct and behavior of Defendants John

Doe 1 and 2 by repeatedly signing contracts to hire them to administer sales and the

solicitation of sales of their healthcare plans with the full knowledge and expectation

Defendant Oscar Management would violate the TCPA.

## The Plaintiff's cell phone is a residential number

65.     The calls were to Plaintiff's cellular phone (915) 540-5210 which is the Plaintiff's

personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains

no landline phones at his residence and has not done so for at least 15 years and primarily relies

on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone

for navigation purposes, sending and receiving emails, timing food when cooking, and sending

and receiving text messages. The Plaintiff further has his cell phone registered in his personal

name and pays the cell phone from his personal accounts.

### Violations of the Texas Business and Commerce Code 305.053

66.     The actions of the Defendants violated the Texas Business and Commerce Code 305.053

by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the

Defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which

violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

67.     The calls from or on behalf of Defendant Oscar Management violated Texas law by

spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.


## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     Defendant Oscar Management and/or their agents placed calls to Plaintiff's cellular

telephone.

70.     Plaintiff never consented to receive calls from or on behalf of Defendant Oscar

Management.  Plaintiff has no relationship with Defendant Oscar Management.

71.     Defendant Oscar Management's calls were made for purposes of advertising and

marketing their health care plans  These calls constituted commercial advertising and

telemarketing as contemplated by the TCPA.

72.     The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47

U.S.C. § 227(b)(1)(A)(iii) and (B).

73.     As a result of their unlawful conduct, Defendant Oscar Management repeatedly invaded

the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. §

227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an

injunction requiring Defendant Oscar Management to stop their unlawful calling campaigns.

74.     Not only did Defendant make these violating calls, Defendant and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

75.     If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(c))

74.      Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

75.     Defendant Oscar Management called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

76.     Plaintiff was statutorily damaged at least eighty-nine (89) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant Oscar Management by the telephone calls described above, in the amount of $500 per call.

77.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

**(Against All Defendants)**

78. Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

79.  The foregoing acts and omissions of Defendant Oscar Management and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3] and,

c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

80.  Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

81.  Mr. Salaiz is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

82.  Mr. Salaiz also seeks a permanent injunction prohibiting Defendant Oscar Management and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

thereon and (2) include the name of the individual caller and Oscar Management's name in the solicitations.

### FOURTH CAUSE OF ACTION
**Violations of The Texas Business and Commerce Code 305.053**

83.   Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

84.  The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant Oscar Management violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

85.   Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

86.   Mr. Salaiz is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant Oscar Management violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant Oscar Management and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3,000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 89 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

G.      An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

H.      Such further relief as the Court deems necessary, just, and proper.


May 17, 2022                                    Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com