UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ERIK SALAIZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| OSCAR MANAGEMENT | § | EP-22-CV-00114-DCG |
| CORPORATION, *a Delaware* | § | |
| *Corporation*, **and JOHN DOES 1–4,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

<u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING
PLAINTIFF'S JURISDICTIONAL DISCOVERY REQUEST</u>

Before the Court is Defendant Oscar Management Corporation's Motion to Dismiss (ECF No. 18). Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). For the following reasons, the Court **DENIES** Defendant's Motion **WITHOUT PREJUDICE** and **ORDERS** the parties to conduct jurisdictional discovery.

## I.    Background

The following facts are derived from Plaintiff's Complaint and are taken as true to adjudicate the present Motion. *See Calhoun v. Hargrove*, 312 F.3d 730, 733–34 (5th Cir. 2002). The Court also adapts the facts from the Declaration attached to Defendant's Motion. Johnson Decl., ECF No. 18, at 23.

Plaintiff lives in El Paso, Texas. Am. Compl., ECF No. 9, at ¶ 1. He owns a cellular phone that he uses as a substitute for a landline phone. *Id.* at ¶ 65. Plaintiff's phone number has a (915) area code, which is the code for El Paso and several nearby Texas cities. *Id.*

Defendant Oscar Management Corporation is a Delaware corporation that has its principal place of business in New York. *Id.* at ¶ 3; Johnson Decl., ECF No. 18, at 23. According to Will Johnson's Declaration, Defendant's senior director of southeast sales, Defendant "provides administrative management services to affiliated insurance and managed care companies." Johnson Decl., ECF No. 18, at 23. Those companies in turn offer "health care policies to the public." *Id.* Johnson claims that Defendant "does not engage in outbound telemarketing or solicitations to sell its insurance policies itself," and thus "does not initiate any outbound sale calls to consumers." *Id.* at 24. Johnson further claims that Defendant "has independent, non-exclusive broker partners who sell Oscar insurance plans." *Id.*

Plaintiff received 89 calls on his cell phone between October 15, 2021 and March 24, 2022. Am. Compl., ECF No. 9, at ¶¶ 27, 49. Because the entity responsible for calling Plaintiff refused to disclose its identity, Plaintiff is unable to identify the entity that transmitted those calls. Pl.'s Resp. Mot. Dismiss, ECF No. 22, at 7. The Court therefore refers to the unknown entity as the "Caller." Each of the 89 calls started with the same artificial or prerecorded voice message in Spanish informing Plaintiff that the Caller had an important message regarding medical insurance. Am. Compl., ECF No. 9, at ¶ 28. The voice message then said, "press one to speak to a representative." *Id.* Upon receiving the 28th call, Plaintiff pressed one to speak to a representative. *Id.* at ¶¶ 31, 49. Plaintiff asked the representative which company she worked for, but she refused to divulge any information except that the Caller was based in Florida. *Id.* at ¶ 38.

To discover the Caller's identity, Plaintiff accepted the offer to buy health insurance. *Id.* at ¶¶ 33, 39. The Caller informed Plaintiff that Defendant would be Plaintiff's insurer under the plan. *Id.* at ¶ 36. Thereafter, Plaintiff received a healthcare identification card in the mail listing

Defendant as the insurer.  *Id.* at ¶ 39.  Plaintiff kept receiving calls from the company even after he already purchased insurance from the Caller.  *Id.* at ¶¶ 41, 49.

Plaintiff seeks to hold Defendant liable for the 89 calls under the Telephone Consumer Protection Act ("TCPA"), the TCPA's implementing regulations, and the Texas Business & Commerce Code.  Defendant moves to dismiss Plaintiff's claims for lack of personal jurisdiction, or alternatively, for failure to state a claim.

## II.    Legal Standard

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires that, upon a motion, a court must dismiss a claim against a defendant if the court lacks personal jurisdiction.  In cases where "a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citation omitted).  When the court rules on the motion without an evidentiary hearing, the plaintiff need only "present sufficient facts to make out a *prime facie* case supporting jurisdiction." *Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citation omitted).  The Court must accept all uncontroverted, well-pleaded allegations in the plaintiff's complaint as true. *Conn Appliances Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019).  However, the Court need not "credit conclusory allegations" in the plaintiff's pleadings, "even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001) (citation omitted).  Furthermore, "[t]he district court is not obligated to consult only the assertion in the plaintiff's complaint in determining whether a *prima facie case* for jurisdiction has been made.  Rather, the district court may consider the contents of the record at the time of the motion," including declarations. *Paz v. Brush Engineered Materials, Inc.*, 445

3

F.3d 809, 812 (5th Cir. 2006) (citations omitted).  If conflicts exist between a plaintiff's factual allegations and the allegations contained in a defendant's affidavit, "such conflicts must be resolved in [the] plaintiff['s] favor."  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 626 (5th Cir. 1999) (citation omitted).

### B.  Personal Jurisdiction

A federal court may exercise jurisdiction over a nonresident defendant, provided state law confers such jurisdiction and its exercise comports with due process under the Constitution. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019).  "[T]he Texas long-arm statute extends to the limits of federal due process," thus "the two-step inquiry collapses into one federal due process analysis." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  Federal due process requires courts to evaluate: (1) whether the non-resident had the requisite "minimum contacts" with the state; and (2) whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice." *Wilson*, 20 F.3d at 647 (citations omitted).

There are two kinds of personal jurisdiction: general and specific.  General jurisdiction requires the defendant to be "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A corporation is "at home" in at least two places: where it is incorporated and where it has its principal place of business. *Id.* at 924.  Courts in those jurisdictions—the place of incorporation and the principal place of business—can exercise general personal jurisdiction over the defendant regardless of the jurisdiction's connection to the claim. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).  Specific jurisdiction, however, is more narrow than general jurisdiction and "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014)

(cleaned up).  Specific jurisdiction over a defendant exists when the defendant's conduct creates a substantial connection with the forum state.  *Id.*

### III.  Discussion

#### A.  Specific Personal Jurisdiction

Plaintiff does not assert that Defendant is subject to general jurisdiction here, so the Court focuses its analysis on specific jurisdiction exclusively.  To determine whether specific personal jurisdiction exists, the court must evaluate: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citation omitted).  The plaintiff bears the burden to satisfy the first two prongs.  *Id.*  If the plaintiff does, the burden then "shifts to the defendant" to show that the exercise of personal jurisdiction "would be unfair or unreasonable."  *Id.*

Plaintiff acknowledges that he is uncertain who is responsible for the calls.  Resp. Mot. Dismiss, ECF No. 22, at 7 ("The fact is that Plaintiff does not know for certain who called Plaintiff.").  According to Defendant, such a concession conclusively establishes that the Court lacks personal jurisdiction over Defendant because Plaintiff fails to connect Defendant to the calls. Def.'s Reply, ECF No. 26, at 3–4.  Further, the Declaration attached to Defendant's Motion states that "Oscar does not engage in outbound telemarketing or solicitations to sell its insurance policies itself and therefore does not initiate any outbound sale calls to customers."  Johnson Decl., ECF

No. 18, at 24.  Although Defendant insists that it did not call Plaintiff, that does not necessarily mean that the Court lacks personal jurisdiction over Defendant.[1]

Under certain circumstances, a court may exercise specific jurisdiction over a principal based on its agent's contacts with the forum. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent with the forum state."). Plaintiff claims that the Caller was acting as Defendant's agent when it made the allegedly unlawful calls at issue. Am. Compl., ECF No. 9, at ¶¶ 51, 69. Therefore, the Court must examine: (1) whether the Caller established the requisite minimum contacts with Texas; and (2) if so, whether the Caller and the Defendant have a principal-agent relationship that would permit the Court to impute the Caller's jurisdictional contacts to Defendant. *See, e.g., PointEast Pharma Consulting, Inc. v. Aktiengesellschaft*, No. 4:21-CV-3654, 2022 WL 4390467, at *4 (S.D. Tex. Aug. 12, 2022), *report and recommendation adopted by* 2022 WL 4389538 (S.D. Tex. Sept. 21, 2022).

### 1. Requisite Contacts

As noted, an entity "has minimum contacts with the forum State" if it "purposefully directed its activities toward the forum State or purposefully availed itself of the privileges of conducting activities there." *Seiferth*, 472 F.3d at 271 (citation omitted). The minimum contact

---

[1] Defendant relies on *Moreland v. SunPath, Ltd.*, No. 6:21-CV-00110-JDK, 2021 WL 6773100, at *1 (E.D. Tex. Sept. 10, 2021) arguing that because it submits a Declaration stating that it does not engage in any outbound calls and does not direct, oversee, or manage any third party initiating calls, and Plaintiff did not set forth anything to controvert that evidence, the court does not need to accept Plaintiff's jurisdictional allegations.  In *Moreland*, however, the plaintiff there did not request jurisdictional discovery or specify any evidence he hoped to obtain to prove specific jurisdiction. *Id.* at *2, n1.  In contrast, Plaintiff here requests jurisdictional discovery.  Moreover, under the rule Defendant proposes, any defendant "could avoid jurisdiction simply by filing a declaration . . . denying the jurisdictional facts asserted by [p]laintiff." *Salaiz v. Pelican Inv. Holdings Grp., LLC*, No. EP-22-CV-00029-FM, 2022 WL 17813209, at *3 (W.D. Tex. Nov. 10, 2022).  The Court will not adopt such a rule.

analysis varies depending on the nature of the underlying claim.  *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495–96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims).  Courts generally agree that a TCPA claim is akin to an intentional tort for jurisdictional purposes, so the Court applies the standard that governs intentional tort claims.  *See Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 643 (N.D. Ill. 2017); *see also Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 566 (S.D. Tex. 2021).  A tortfeasor's "random, fortuitous, or attenuated contacts" or its "unilateral activity" with the plaintiff will not suffice to establish personal jurisdiction.  *Danziger & De Llano*, 24 F.4th at 495 (citation omitted).  Instead, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct" which "creates the necessary contacts with the forum."  *Id.* (citation omitted).  "Mere injury to a forum resident is not . . . sufficient." *Id.* at 497 (cleaned up).  The proper question is "whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 571 U.S. at 290.

Defendant asserts that "calling a cell phone number with an area code belonging to a specific state" does not suffice to establish the requisite minimum contacts for specific personal jurisdiction.  Mot. Dismiss, ECF No. 18, at 8.[2]  The Court disagrees.  The Fifth Circuit has held in several non-TCPA cases that when a tortfeasor sends communications to a plaintiff in the forum state, and *the communications themselves* constitute an intentional tort, those communications may

---

[2] Defendant cites to *Cantu v. Platinum Mktg. Grp., LLC*, for this proposition.  There, the district court held that that the mere fact "that a TCPA defendant called a phone number in an area code associated with the plaintiff's alleged state of residence does not, by itself, establish minimum contacts with that state" for personal jurisdiction purposes.  No. 1:14-CV-71, 2015 WL 13912331, at *3 (S.D. Tex. July 13, 2015).  This Court does not agree with *Cantu* and follows the majority of courts who have reached the opposite conclusion.  *See Pepper v. Stress Free Health Options, Inc.*, No. H-22-1251, 2022 WL 3599904, at *2 (S.D. Tex. Aug. 23, 2022) (stating that *Cantu* is "contrary to most of the cases across the country addressing the issue" of whether a defendant purposefully avails itself of a forum's laws when it unlawfully dials a cell phone with an area code assigned to that forum).

establish sufficient contacts with the forum to support personal jurisdiction.  *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212–13 (5th Cir. 1999) (holding that defendant's "letters, faxes, and phone calls to Texas" that allegedly "contained fraudulent misrepresentations and promises" created sufficient minimum contacts with Texas); *see also Trois*, 882 F.3d at 491 ("The defendants should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations.").

As one example, in *Lewis v. Fresne*, a nonresident defendant participated in a telephone conference call that was designed to convince the plaintiff—a forum resident—to make a financially disastrous loan.  252 F.3d 352, 355, 358 (5th Cir. 2001).  Also during the call, the nonresident defendant failed to correct allegedly false statements that his co-defendant made.  *Id.* The Fifth Circuit explained that "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."  *Id.* at 358–59.  The Fifth Circuit acknowledged that, in previous cases, it held that "mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction."  *Id.* at 359 (citing *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992)).  Unlike *Lewis*, however, those previous cases "did not . . . involve an intentional tort."  *Id.*  Thus, when the actual content of the communications with a forum gives rise to an intentional tort claim, this alone can constitute purposeful availment for jurisdictional purposes.  *Id.* (citation omitted).  Similarly to *Lewis*, the communications here form the basis of Plaintiff's claim and that suffices for the purposeful availment requirement.

Moreover, most courts to address this question have held that calls to a cell phone can serve as minimum contacts with the state containing the phone's area code when the calls are received there.  *See Shelton v. Nat'l Gas & Elec., LLC.*, No. CV 17-4603, 2019 WL 1506378, at *1 (E.D.

Pa. Apr. 5, 2019); *see also Pepper v. Stress Free Health Options, Inc.*, No. H-22-1251, 2022 WL 3599904, at *2 (S.D. Tex. Aug. 23, 2022); *see also Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 769 (S.D. Tex. 2022).

Defendant also argues that simply calling a phone number with a Texas area code does not demonstrate that it knew the call would be received in Texas.  Mot. Dismiss, ECF No. 18, at 8. Defendant claims that without such knowledge it cannot be shown that it purposefully availed itself of the protections of Texas law.  *Id.*  In *Thomas*, a district court rejected the same argument Defendant makes here.  *Thomas*, 559 F. Supp. 3d at 567–68.  There, the court reasoned that "Congress designed the TCPA to protect consumers wherever they might receive and be harassed by robocalls. And requiring such putative hyper-specific knowledge by the offending, robocalling defendant would severely curtail the statutory protection granted by Congress to individuals against such robocallers."  *Id.* at 567.  The court further explained that,

> It thus doesn't matter whether [nonresident defendant] knew in advance that [plaintiff] resided in Texas because certain types of intentional conduct must, by their very nature, manifest their effects beyond the borders of the state in which the defendant acts. Here, [nonresident defendant] (allegedly) engaged in the very business practice specifically condemned by Congress—calling numbers robotically at random. And by doing so, [nonresident defendant] knew full well that it was using cellular and wire lines intended to go far beyond its home state. In this instance, *wherever* it reaches a consumer with a robocall, [nonresident defendant] has purposefully availed itself of that state's laws. That it didn't know precisely where its intentional, externally directed contact would land with each dial of the phone is no reason to deprive a federal court of personal jurisdiction where its calls did, in fact, land.

*Id.* at 568.[3]  The Court finds *Thomas* persuasive and declines to impose a hyper-specific knowledge requirement—that the Caller must have known the call would be received in Texas.  Dialing a

---

[3] *Thomas* did make clear to clarify that "[t]his isn't to say that a person carrying around a cell phone necessarily carries with it personal jurisdiction over any business that might call that line wherever the phone might be located at the time. For instance, a business calling the (713) area code with the expectation of reaching someone in Houston won't necessarily be subject to personal jurisdiction in Oklahoma City if

Texas area code and reaching that Texas resident in Texas suffices for the minimum contact inquiry.

## 2.  Arising out of Defendant's Forum-Related Contacts

As explained above, the phone calls Plaintiff received are forum-related contacts.  The case itself is a TCPA claim where it is "unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  Thus, this case does arise out of the forum-related contacts.

## 3.  Fairness and Reasonable

When assessing whether exercising jurisdiction over a defendant would be fair and reasonable, the court must balance: "(1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Sangha v. Navig8 Ship Mgmt. Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (citations omitted).  As indicated, a defendant bears the burden to show that the assertion of jurisdiction would be unfair.  *Wien Air Alaska*, 195 F.3d at 215 (citation omitted). To meet this burden, a defendant must make "a compelling case" against jurisdiction.  *Burger King Corp.*, *v. Rudzewicz*, 471 U.S. 462, 477 (1985).  It is "rare" that a defendant can make such a compelling case once minimum contacts have been shown.  *Wien Air*, 195 F.3d at 215.

---

the person receiving the call happened to travel there with his or her cell phone that day."  *Thomas*, 559 F. Supp. 3d at 568.

Defendant argues that exercising personal jurisdiction over it would be unfair and unreasonable. Mot. Dismiss, ECF No. 18, at 9. Defendant claims it "has no relationship with Texas related to this matter that would make it reasonable" for it to defend a lawsuit in this forum. *Id.* at 10. However, if the court ultimately finds that the Caller was acting as Defendant's agent, it disagrees that exercising jurisdiction would be unfair and unreasonable. Most, if not all, of the pretrial discovery and pretrial motion practice can be done remotely, which significantly reduces Defendant's burden to defend itself in Texas. Further, a Texas forum and the State of Texas have an interest in addressing alleged violations of federal law that affect Texas residents. Accordingly, there is no basis to find that subjecting Defendant to personal jurisdiction in a Texas court to resolve this claim would be unfair or unreasonable.

Ultimately, the Court concludes that the Caller's allegedly unlawful communications to a Texas resident *via* a telephone with a Texas area code create the requisite minimum contacts with Texas to support specific personal jurisdiction. The Court further concludes that exercising personal jurisdiction here would not be unfair or unreasonable. Thus, if the Court concludes that it's proper to impute those contacts to Defendant on the basis of a principal-agent relationship, those contacts will suffice to create a *prima facie* case for jurisdiction over Defendant.

## B. Agency Relationship

Under Texas law, "[a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (citation omitted). The existence of an agency relationship can be shown by demonstrating (1) actual authority, (2) apparent authority, or (3) ratification. Actual authority exists when the principal has both the right: "(1) to assign the agent's task; and (2) to control the means and details of the process by which the

agent will accomplish that task." *Id.* (citation omitted).  Apparent authority arises "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Matter of Osborne*, 951 F.3d 691, 704 (5th Cir. 2020) (citation omitted).  Ratification can impose liability on the principal if it retains the benefit of a transaction after acquiring full knowledge of the underlying circumstances. *Land Title Co. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756–57 (Tex. 1980)

Plaintiff claims that the Caller was acting as Defendant's agent when it made the allegedly unlawful calls. Am. Compl., ECF No. 9, at ¶¶ 51, 69.  Defendant argues that Plaintiff fails to plead such a relationship.  Mot. Dismiss, ECF No. 18, at 9.  Defendant further argues that "even if a representative of an unknown third party" referenced Defendant or one of its affiliates to Plaintiff, "that fact alone does not give rise to any sort of agency relationship." *Id.*  As previously stated, Plaintiff concedes that he is uncertain who called him because the Caller refused to disclose its identity.  Resp. Mot. Dismiss, ECF No. 22, at 7.  Plaintiff claims that the Court cannot reasonably expect him to know of the possibility of such a relationship between Defendant and the Caller without letting him first conduct discovery.  Plaintiff therefore requests jurisdictional discovery to explore this issue. The Court agrees with Plaintiff.

First, Defendant is correct that Plaintiff's Complaint fails to plausibly allege any agency relationship between Defendant and the Caller.  The Court cannot infer an agency relationship from the mere fact that the telemarketing calls were made on behalf of Defendant.  In order for an agency relationship to exist based on actual authority, Defendant must have had the authority to assign tasks and control the means and details of the process by which the Caller conducts its business. *See Indian Harbor Ins. Co.*, 535 F.3d at 364.  Without such control, the calls are merely unilateral activities of a third party, which will not suffice for personal jurisdiction purposes.

Plaintiff also fails to sufficiently allege that the Caller acted with apparent authority. Apparent authority must be traceable to the conduct of the principal—in this case to Defendant. Plaintiff provides no facts indicating that Defendant acted to create the appearance of an agency relationship. Plaintiff's ratification theory also suffers from the same defects. Plaintiff provides no facts indicating that Defendant had knowledge of the underlying circumstances of the transaction.

The Court emphasizes that Plaintiff's lack of specificity in his pleadings might be attributable to the fact that the Caller refused to disclose its identity. In analogous cases, courts have recognized a plaintiff's difficulty and "limited ability" to discern the identity of the telemarketing firm responsible for making such calls and the nature of its relationship with the seller without discovery. *Callier v. Sunpath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *4 (W.D. Tex. Aug. 10, 2020); *see also Horton v. SunPath, Ltd.*, No. 3:23-CV-631-E-BN, 2023 WL 3807043, at *1–2 (N.D. Tex. June 1, 2023); *see also Cano v. Assured Auto Grp.*, No. 3:20-CV-3501-G, 2021 WL 3036933, at *9–10 (N.D. Tex. July 19, 2021). In such instances, courts have typically ordered the defendant to produce the contracts or other related documents with telemarketers who sell its products, so that both the plaintiff and court can determine whether an agency relationship exists.

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund*, *Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). A party seeking jurisdictional discovery must first make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). This requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (citation omitted). Discovery of jurisdictional facts is appropriate when the existing

record is inadequate to support personal jurisdiction and the record shows that the requested discovery is likely to produce facts needed to withstand a motion to dismiss. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). A plaintiff requesting jurisdictional discovery should describe "what facts [it] expect[s] to discover and how that information would support jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014). Once this showing has been made, "the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding*, 415 F.3d at 429 (citation omitted). Ultimately, however, permitting jurisdictional discovery is within the trial court's discretion. *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1148 (5th Cir. 1985).

Plaintiff satisfies his burden to enable him to conduct jurisdictional discovery. Plaintiff's pleadings allege that Defendant is the beneficiary of the marketing calls Plaintiff received, even if Defendant did not make the calls directly. Plaintiff further claims that the Caller alleged to have violated the TCPA had the authority to sell Plaintiff Defendant's insurance policy on its behalf. These allegations "suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding*, 415 F.3d at 429. The Court will therefore follow the approach the majority of district courts in this circuit have taken and permit jurisdictional discovery to determine whether or not an agency relationship exists, which would resolve the personal jurisdiction issue.

### C. Leave to Amend

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.* The language of this rule "evinces a bias in favor of granting leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (cleaned up). Generally, courts should grant leave to amend "unless the defect is simply incurable or the plaintiff has failed to

plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). A district court must possess a "substantial reason" to deny a request for leave to amend. *Id.* (citations omitted). A court may also sua sponte allow a litigant to amend his pleadings. *Zinnah v. Lubbock State Supported Living Ctr.*, No. 23-10242, 2023 WL 7314350, at *2 (5th Cir. Nov. 6, 2023) (recognizing a district court sua sponte granting leave to amend). Five considerations guide the Court in determining whether to permit a party leave to amend his complaint: "(1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Smith*, 393 F.3d at 595. The Court sua sponte grants Plaintiff leave to amend his Complaint upon completion of jurisdictional discovery. Plaintiff's pleadings will need to establish this Court's jurisdiction, so an amendment is necessary here. Given the early stage of the litigation, there is no indication of undue delay or undue prejudice to Defendant here.

## IV.    Conclusion

Plaintiff has not met his pleading burden to establish that this court has personal jurisdiction over Defendant. Plaintiff, however, has satisfied his burden to permit jurisdictional discovery for the purpose of determining whether an agency relationship exists here. Following jurisdictional discovery, Plaintiff will be permitted to amend his Complaint. Plaintiff shall do so only if he can establish that Defendant is subject to personal jurisdiction in this forum. As it remains uncertain at this point whether the Court has personal jurisdiction over Defendant, it does not reach the 12(b)(6) issue. Accordingly, the Court enters the following orders:

1. **IT IS ORDERED** that Defendant's "Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 18) is **DENIED WITHOUT PREJUDICE.**

2. **IT IS FURTHER ORDERED** that Defendant **PRODUCE** to Plaintiff contracts or agreements it has with companies authorized to market their products or services or to initiate outbound sales calls to consumers on its behalf during the period Plaintiff

alleges he received such calls. Alternatively, Defendant must **PRODUCE** any documents describing its relationship with telemarketers and the process by which such an entity may connect a customer with Defendant. Defendant must provide Plaintiff with such documents within **30 DAYS** from the date of this Order.

3. **IT IS FURTHER ORDERED** that the Court's previous "Order Granting Motion to Stay Discovery as Unopposed" (ECF No. 28) is **MODIFIED** to the extent it is inconsistent with this Order.

4. **IT IS FURTHER ORDERED** that Plaintiff **SHALL** file an Amended Complaint, if any, no later than **10 DAYS** after the thirty-day discovery deadline.

5. **IT IS FURTHER ORDERED** that Defendant **SHALL** answer or otherwise respond to Plaintiff's Amended Complaint no later than **10 DAYS** upon Plaintiff's filing.[4]

6. **IT IS FINALLY ORDERED** that the Clerk of Court mail this Order to Plaintiff at the following address:

Erik Salaiz
319 Valley Fair Way
El Paso, TX 79907

**So ORDERED and SIGNED this 25th day of June 2025.**

_____
**DAVID C. GUADERRAMA
SENIOR U.S. DISTRICT JUDGE**

---

[4] Because the Court does not determine whether or not personal jurisdiction exists, Defendant did not waive this argument. *See TI Payments LLC v. New U Life Corp.*, No. 2:19-cv-01816-APG-DJA, 2022 WL 195111, at *3 (D. Nev. Jan. 21, 2022) ("[Defendant's] participation in jurisdictional discovery will not constitute a waiver of its objections to this court's exercise of personal jurisdiction over it.").